UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Docket No. 2:22-CR-119-PJB |
| v. | ) | |
| | ) | |
| DEVIN JAMES MELYCHER | ) | |

GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

Between May and September 2022, the defendant, Devin James Melycher, sent numerous letters—threating serious injury and death—to the federal judge, a prosecutor and other individuals involved in his then-pending criminal matter.[1]  On November 16, 2022, the defendant pleaded guilty to mailing threatening communications, in violation of 18 U.S.C. § 876(c); threatening to murder a federal law enforcement officer, in violation of 18 U.S.C. §§ 115(a)(1)(B) and (b)(4), and threatening to murder a federal judge, in violation of 18 U.S.C. §§ 115(a)(1)(B) and (b)(4).  At the defendant's request, the Court set an expedited sentencing hearing for December 27, 2022.

For the reasons set forth below and in the Government's Objections to the Pre-Sentence Investigation Report (PSR), the United States recommends a sentence of 51 months' imprisonment, or a sentence at the bottom-of-the-Guidelines as determined by the Court, to run consecutive to the 130 months' sentence imposed in docket number 2:21-CR-169-1.  Such a sentence is sufficient but not greater than necessary to achieve the purposes of sentencing.

---

[1] Docket number 2:21-CR-169-1

## I.     Argument

A.     <u>The defendant's offense level is 22, resulting in a guidelines range of 51 to 63 months.</u>

The PSR determined that the defendant has a total offense level is 23, his criminal history category is III, and his guideline range of imprisonment is 57-71 months.  The PSR's calculation does not include 3-level reduction for acceptance of responsibility.  The government objects to the PSR's grouping analysis, which results in a 3-point offense level enhancement.[2]

The PSR properly groups Counts Three through Six, as they all involve threats to the same victim, Victim E.  *See* PSR ¶¶ 21, 34-39.  However, the PSR incorrectly fails to group Counts One and Two, stating that "[a]lthough Count 2 involves a victim named in Count 1, there are additional victims named in Count 1, thus Count 1 and Count 2 cannot be grouped and will stand alone."  Id. ¶ 21.  However, the relevant application note explains that for purposes of grouping, "multiple counts involving making a threatening or harassing communication to the same victim are grouped together under § 3D1."  USSG § 2A6.2, app. n.3

Here, Counts One and Two involve the same threating communication—a letter from the defendant addressed to Victim A.  And the threat to murder Victim A, charged in Count Two, is the same threat to injure Victim A charged in Count One.  While the defendant's conduct

---

[2] The PSR also does not apply a reduction for acceptance of responsibility because the defendant has continued to engage in the same criminal conduct—sending threatening letters—after his guilty plea.  The defendant promptly admitted guilt and pleaded guilty to all counts charged in the indictment.  The Court should give significant weight to the defendant's prompt and complete guilty plea in determining whether a reduction for acceptance is appropriate.  USSG § 3E1.1, app. n.3.  But, on balance, the government agrees with the PSR that the defendant's "post-offense [criminal] conduct bears on the 'sincerity of a defendant's professed acceptance of responsibility.'"  *United States v. McCarthy*, 32 F.4th 59, 63 (1st Cir. 2022) (citation omitted); *accord United States v. Jordan*, 549 F.3d 57, 61 (1st Cir. 2008) (continued "[c]riminal conduct, whatever its nature, is a powerful indicium of a lack of contrition.").

The government also notes that prior to Attorney Duffett's withdrawal and the defendant's subsequent plea without an agreement, the parties had been negotiating a plea agreement that included a bottom-of-the-Guidelines recommendation with 3-level reduction for acceptance of responsibility.

violated two separate criminal statutes, Counts One and Two "involv[e] making a threatening or harassing communication to the same victim," § 2A6.2, app. n.3, and therefore should be grouped under § 3D1.2.  Moreover, "Application Note 2 to § 2A6.1 does nothing more than summarize how the grouping rules set forth in § 3D1.2 apply to convictions for sending threatening or harassing communications."  *United States v. Chapple*, 198 F. App'x 745, 750 (10th Cir. 2006).  And, under § 3D1.2, Counts One and Two should be grouped as they involve "the same victim and the same act or transaction."  § 3D1.2(a).

Thus, there are two groups and, as laid out in the PSR, each group has an adjusted offense level of 20.  Under § 3D1.4 there are two units, resulting in a 2-level increase and a combined offense level of 22.  Because the defendant is criminal history category III, the guideline sentencing range is 51 to 63 months.

B.  <u>A sentence of 51 months' imprisonment is appropriate.</u>

The defendant committed serious crimes over several months.  The defendant's conduct is laid out in detail in the PSR[3] but, in sum, he sent numerous graphic threatening letters to the judges, prosecutor, defense attorney, and investigator working on his prior criminal case.  After being charged and convicted in this case, he continued the same behavior, this time sending threatening letters to the judge and prosecutor in this case, and to other officials.

In enacting the federal statutes aimed at combatting the communication of threats through interstate commerce and against federal officials, Congress recognized the serious harm and danger to other persons and the community that arises from even a singular communication of a threat to harm and kill—let alone the explicit, repeated, and specific threats of violence that the defendant communicated to his victims in order to intimidate, terrorize, and instill fear.  This

---

[3] PSR ¶¶ 4-16.

3

harm is felt not only by the victims targeted by the defendant, but also law enforcement and other

officials who must respond to these threats.  For example, during the defendant's sentencing

hearing on September 15, 2022, Victim E commented on the defendant's many threatening

letters and their impact on the administration of justice:

> Before I proceed further, I should address a pretty obvious issue. The docket reflects
> that beginning early June and continuing until this month the defendant has written
> me many, many times. These letters are extraordinarily derogatory, they are vulgar,
> and they are personal, and they're threatening. They all promise violence, and they
> wish violence on me. In at least four of the letters he has – the defendant has
> threatened to murder me, and he has not done so in subtle terms but in very direct
> terms. On June 6th he said, quote, I am going to fucking murder you one day and
> you deserve it. That's at ECF number 94. And just on August 31 he said, I'm going
> to fucking murder you, you worthless waste of life, and that's at ECF number 110.
>
> In light of these letters I have considered whether I should recuse from Mr.
> Melycher's case but ultimately have decided against it. My view is that if I were to
> recuse Mr. Melycher and a new judge were appointed, Mr. Melycher would direct
> his anger at the new judge since the new judge would have to sentence him and my
> recusal would not – would only delay the defendant's sentencing, but – and the
> defendant has told me repeatedly he wants to be sentenced. But once a new judge
> appeared I have no reason to think he would not be as angry with the new judge as
> he is now with me, and I would only force a new judge to deal with this conduct,
> and we'd have two, not one, judges being subject to his letters.

Sentencing Tr., at 5-6, docket number 2:21-CR-169.

And these threatening communications—particularly those sent to Victim A and Victim

E—were not a momentary lapse in judgment or a mistake.  For over five months, the defendant

engaged in a pattern of communicating threatening letters to multiple victims.  Where a

defendant has communicated several threats, including to multiple victims, courts have generally

sentenced those defendants to sentences comparable to the government's recommendation in this

case. *See*, *e.g.*, *United States v. Winegar*, Case No. 21-21-SM, ECF No. 39 (D.N.H., December 2,

2021) (defendant left voicemails at the offices of six members of Congress with threats and sent

an emailed threat to a New Hampshire State House of Representative, the voicemails and email

address identified the defendant by name, and the defendant was sentenced to 33 months);

*United States v. Tomasack*, Case No. GLR-18-552, ECF No. 14 (January 30, 2019) (defendant

made telephonic threats to the Pentagon Tours Office and the CNN news affiliate in Atlanta,

Georgia, and other private and government locations, and was sentenced to 21 months); *United*

*States v. Hoff*, Case No. MHW-17-144, ECF Nos. 47, 49 (S.D. Ohio May 15, 2018) (threatening

voicemails on congressman's office phone using the same phone number registered to him, made

threats to the congressman's family, and the PSR determined he had a criminal history category

of I, receiving above-Guidelines 40 months sentence); *United States v. Kabbaj*, Case No. 16-365,

ECF No. 137 (E.D. Pa. May 2, 2017) (defendant sent multiple emails and made multiple court

filings towards one U.S. Magistrate Judge and used a known email address he had used in

various court filings, receiving 23 months sentence).

Given the seriousness of the defendant's criminal conduct, the need to promote respect

for the law, protect the public from further crimes of the defendant, and afford adequate

deterrence are paramount here. A clear message is required that sending threats of serious bodily

injury or death will be met with severe consequences. A significant sentence within the

Guidelines will reflect the seriousness of this offense, promote respect for the law, protect the

public from further crimes of the defendant, and afford adequate deterrence.

The defendant's conduct also appears inextricably intertwined with his ongoing mental

health struggles. While it does not appear that the defendant's mental condition warrants a

downward departure,[4] the government's recommendation for a bottom-of-the-Guidelines

---

[4] "Mental condition is a discouraged basis for departure under the guidelines, . . . so a departure is warranted only if circumstances are extraordinary" or atypical. *United States v. Derbes*, 369 F.3d 579, 580 (1st Cir. 2004) (citing USSG § 5H1.3; ch. 5, pt. H, introductory cmt.); *accord United States v. Maldonado-Montalvo*, 356 F.3d 65, 74 (1st Cir. 2003) ("[D]eparture is warranted only if "the defendant's mental condition presents an 'extraordinary' or 'atypical' case."); *see also United States v. Doering*, 909 F.2d 392, 394-95 (9th Cir.1990) (defendant's need for treatment alone is not an adequate ground for departure).

sentence—despite the seriousness and circumstances of the offence—accounts for the defendant's mental health conditions. In addition, the government respectfully requests that the Court make a judicial recommendation for placement at a BOP facility with remedial mental health programs and other correctional treatment programs to provide the defendant with adequate care.

A sentence of 51 months' imprisonment is consistent with similarly situated defendants, reflects the seriousness of this offense, will promote respect for the law, and will deter the defendant and others from committing similar crimes. This sentence is at the bottom of the guideline range and appropriately accounts for the defendant's personal circumstances, particularly his mental health.

## II.    Conclusion

For these reasons, and additional information that may be presented at the sentencing hearing, a 51-month sentence, consecutive to the 130 months' sentence imposed in docket number 2:21-CR-169-1, is sufficient, but not greater than necessary, to serve the purposes of sentencing. It accounts for the defendant's individual circumstances while assuring just punishment for a serious crime and should be imposed in this case.

Date: December 22, 2022                    Respectfully submitted,

                                           JANE E. YOUNG

                                           United States Attorney
                                           District of New Hampshire

                                           /s/ Matthew T. Hunter
                                           Matthew T. Hunter

---

The PSR notes that the defendant, while deemed competent to stand trial, suffers from several mental health disorders. PSR ¶¶ 62-67. While nothing in the PSR indicates that these conditions are sufficiently extraordinary or atypical to warrant a departure, the Court should consider them when determining an appropriate sentence.

Cam T. Le
Assistant U.S. Attorneys
Acting under Authority Conferred by
28 U.S.C. § 515

## CERTIFICATE OF SERVICE

I, Matthew T. Hunter, submitted the foregoing *Government's Memorandum in Aid of Sentencing* with the Clerk of Court for the U.S. District Court, District of Maine, using the electronic case filing (ECF) system.  I hereby certify that I have served defendant, Devin James Melycher, via first-class mail, postage prepaid, on this date, to:

Devin James Melycher, ID # 782691
Androscoggin County Jail
40 Pleasant Street
Auburn, ME 04210

Devin James Melycher, ID # 782691
c/o Securus Digital Mail Center-Androscoggin
P.O. Box 828
Lebanon, MO 65536

In addition, a copy of the foregoing will be served to stand-by counsel, Neale Duffett, via email.

Dated: December 22, 2022

/s/ Matthew T. Hunter
Matthew T. Hunter
Assistant U.S. Attorney
District of New Hampshire
Acting under Authority Conferred by
28 U.S.C. § 515

7